JUDGE BAER

**MARK K. SCHONFELD (MS-2798)**
**REGIONAL DIRECTOR**
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center, Suite 400
New York, New York 10281-1022
(212) 336-1020

**07 CV 2762**

APR 0 5 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

-against-

ALEXIS AMPUDIA,
a/k/a ALEXIS GEANCARLOS AMPUDIA NAVALO,
a/k/a ALEXIS EMIAS, a/k/a ALEXIS ROJAS,

        Defendant.

07 CV ____ ( )

**COMPLAINT**

---

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Alexis Ampudia, also known as Alexis Geancarlos Ampudia Navalo, Alexis Emias and Alexis Rojas ("Ampudia" or the "Defendant"), alleges:

## SUMMARY

1. The Commission brings this emergency action to halt a securities fraud scheme in which Ampudia combined identity theft with market manipulation. Ampudia purchased thinly-traded securities at cheap prices in his own brokerage account. He then used stolen identities to open online brokerage accounts in the names of unsuspecting identity theft victims and bought

securities of the same companies to increase artificially the securities' price. Ampudia profited by selling his own securities at artificially inflated prices. Ampudia is continuing to steal the identities of innocent victims and to use their identities to perpetrate securities fraud.

2. Since at least November 2006, Ampudia has stolen the identities of at least eight individuals ("Victims") and opened at least nine online brokerage accounts in the names of the Victims without their knowledge or consent (the "Victims' Brokerage Accounts"). During the course of his scheme, Ampudia transferred at least approximately $1,038,250 from the Victims' bank accounts to fund the Victims' Brokerage Accounts. Ampudia then used the funds to purchase thinly-traded securities (the "targeted securities") in the Victims' Brokerage Accounts at artificially inflated prices.

3. As the price of the targeted securities surged, Ampudia sold his personal holdings of the targeted securities that he had previously purchased at lower prices. The Victims' broker-dealers suffered losses of at least approximately $269,704 as a result of Ampudia's conduct.

4. Ampudia utilized this scheme to purchase and sell the securities of at least five different companies and has received at least $140,000 in unlawful profits.

5. By this action, the Commission seeks to terminate this ongoing fraudulent activity, prevent the dissipation of Ampudia's assets, and compel an accounting of funds. The Commission brings this action to obtain a temporary restraining order, preliminary and permanent injunctions preventing further violations of the antifraud provisions of the federal securities laws, disgorgement of ill-gotten gains and prejudgment interest thereon, and civil penalties, and to obtain other equitable relief.

## VIOLATIONS

6. By virtue of the conduct alleged in this Complaint, the Defendant, directly or indirectly, singly or in concert, has engaged and is engaging in acts, practices and courses of business, that constitute violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

7. Unless the Defendant is temporarily restrained and preliminarily and permanently enjoined, he will continue to engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), seeking to restrain and enjoin permanently the Defendant from engaging in the acts, practices and courses of business alleged herein.

9. The Commission also seeks, as immediate relief, a temporary restraining order and a preliminary injunction against the Defendant, an asset freeze, an order providing for expedited discovery, and an order prohibiting the Defendant from destroying, altering or concealing documents.

10. Finally, the Commission seeks a judgment ordering the Defendant to disgorge ill-gotten gains with prejudgment interest thereon, and ordering the Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.

13. The Defendant, directly and indirectly, singly or in concert, has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and/or the mails, in connection with the transactions, acts, practices and courses of business alleged herein.

14. Venue lies in this District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Certain of the transactions, acts, practices and courses of business alleged herein occurred in the Southern District of New York, including, among other things, Ampudia's unlawful accessing of and transferring funds from Victims' bank accounts located in the Southern District of New York, without the knowledge or consent of the Victims. Additionally, certain of the Victims reside within the Southern District of New York.

## THE DEFENDANT

15. **Ampudia**, age 22, resides in Brooklyn, New York. He is a citizen of Panama.

## FACTS

A. **Ampudia's Identity Theft Scheme**

16. From at least November 2006 and continuing to the present, Ampudia engaged in a deceptive scheme in which he stole the identities of unwitting Victims, opened brokerage accounts in the names of the Victims, and used these brokerage accounts to manipulate the market for the stock of at least four issuers and the warrants of another issuer.

4

17.     Ampudia's *modus operandi* was similar for each manipulation.  First, Ampudia stole the Victims' identities.  Then, Ampudia posed as the Victims and caused the Victims' respective banks to transfer a total of approximately $1,038,250 of the Victims' funds to brokerage accounts he opened in the Victims' names.  Ampudia opened the Victims' Brokerage Accounts using the Internet, without the Victims' knowledge or consent.  Ampudia then purchased thinly-traded securities at market prices, using his own online brokerage account.  The securities chosen by Ampudia generally traded below $0.25 per share and had little or no trading volume.  Using the Victim's Brokerage Accounts, Ampudia then placed a series of large buy orders for the targeted securities, thereby driving up the securities' prices.  Ampudia then sold the targeted securities in his own accounts at the artificially inflated share prices that he had created.  As a result of Ampudia's fraudulent scheme, he received at least $140,000 in illicit profits.

18.     From a computer linked to his home address, which is identified through a unique Internet Protocol ("IP") Address,[1] Ampudia manipulated the securities of at least five public companies: Wendt-Bristol Health Services Corp., Atomic Burrito Inc., Carematrix Corp., Locateplus Holdings Corp. and Micro-Integration Corp.  From the same computer linked to his home address, Ampudia contemporaneously traded the same securities in his own account.

19.     By virtue of the Defendant's actions, the broker-dealers at which Ampudia opened the Victim's Brokerage Accounts suffered losses in excess of approximately $269,704 by unwittingly providing the equity for the Defendant's trades in the Victims' Brokerage Accounts.

---

[1] Internet protocol is a method through which computers communicate over the Internet.  Each computer has a unique identifier (i.e., an IP Address) that distinguishes it from other computers.

5

### Wendt-Bristol Health Services Corp.

20. Wendt-Bristol Health Services Corp. is a corporation located in Columbus, Ohio. Its common stock is quoted on the Pink Sheets[2] under the symbol WMDB. In the 30 trading days before November 17, 2006, its average daily trading volume was 966 shares, and its closing price on November 14, 2006 (the last date on which trading occurred in WMDB stock prior to November 17, 2006), was $0.002 per share.

21. At 9:38 a.m. on November 17, 2006, Ampudia purchased 108,000 shares of WMBD at $0.005 per share, through his own brokerage account at Track Data Securities Corp. ("Track Data").

22. After Ampudia had completed his own purchases of WMDB stock, between 9:50 a.m. and 10:04 a.m., Ampudia purchased a total of 257,000 shares of WMDB stock in one of the Victim's Brokerage Accounts at TD Ameritrade, at prices ranging from $0.015 to $0.05 per share for a total of $12,225. The IP Logs of the Victim's Brokerage Account show that the account was accessed on that day by a computer linked to Ampudia's home address.

23. While Ampudia was purchasing WMDB stock in the Victim's Brokerage Account, at 10:00 a.m., he sold all 108,000 shares of WMDB stock at $0.05 per share, through his Track Data account.

24. The price of WMDB reached an intra-day high of $0.06 per share. By the end of the day, WMDB's price had fallen to close at $0.03 per share. Total volume for the day was 598,600 shares. Ampudia repeated this conduct in WMDB on November 22, 2006 and on November 24, 2006 (using a different Victim's Brokerage Account at TD Ameritrade).

---

[2] The "Pink Sheets" is an electronic quotation system that displays quotes from broker-dealers for many of the over-the-counter (OTC) securities. Market Makers and other brokers who buy

25. As a result of Ampudia's manipulative trading in WMDB securities, he obtained approximately $31,947.09 in illicit profits.

### Atomic Burrito Inc.

26. Atomic Burrito Inc. is a corporation located in Oklahoma City, Oklahoma. Its common stock is quoted on the Pink Sheets under the symbol ATOM. In the 30 trading days before November 21, 2006, its average daily trading volume was 1,458 shares, and its closing price on November 20, 2006, was $0.001 per share.

27. On November 21, 2006, between 9:42 a.m. and 9:50 a.m., Ampudia purchased 115,000 shares of ATOM, at prices ranging from $0.01 and $0.09 per share, through his Track Data brokerage account.

28. After Ampudia had completed his purchase of ATOM stock, between 9:51 a.m. and 10:31 a.m., Ampudia purchased a total of 380,000 shares of ATOM stock in one of the Victim's Brokerage Accounts at TD Ameritrade, at prices ranging from $0.09 to $0.25 per share for a total of $75,302. The IP Logs show that the account was accessed that day by a computer linked to Ampudia's home address.

29. While Ampudia was purchasing ATOM stock in the Victim's Brokerage Account, between 9:57 a.m. and 10:03 a.m., he sold all 115,000 shares of his ATOM stock at prices between $0.12 and $0.25 per share, through his Track Data account.

30. The price of ATOM reached an intra-day high of $0.25 per share. By the end of the day, ATOM's price had fallen to close at $0.02 per share. Total volume for the day was 789,700 shares.

31. As a result of Ampudia's manipulative trading in ATOM stock, he obtained

---

and sell OTC securities, can use the Pink Sheets to publish their bid and ask quotation prices.

approximately $18,450 in illicit profits.

## Carematrix Corp.

32. Carematrix Corp. is a corporation located in Newton, Massachusetts. Its common stock is quoted on the Pink Sheets under the symbol CMDCQ. In the 30 trading days before November 21, 2006, its average daily trading volume was 56 shares, and its closing price on November 20, 2006, was $0.002 per share.

33. On November 21, 2006, between 10:37 a.m. and 10:38 a.m., Ampudia purchased 18,450 shares of CMDCQ through his Track Data brokerage account at $0.04 per share.

34. After Ampudia had completed his purchase of CMDCQ stock, between 10:49 a.m. and 10:56 a.m., Ampudia purchased a total of 85,800 shares of CMDCQ stock in one of the Victim's Brokerage Accounts at TD Ameritrade, at prices ranging from $0.04 to $0.1 per share for a total of $7,442. The IP Logs show that the account was accessed that day by a computer linked to Ampudia's home address.

35. While Ampudia was purchasing CMDCQ stock in the Victim's Brokerage Account, at 10:53 a.m., he sold all 18,450 shares of CMDCQ at $0.10 per share through his own account at Track Data.

36. The price of CMDCQ reached an intra-day high of $0.10 per share. By the end of the day, CMDCQ price had fallen to close at $0.09 per share. Total trading volume for the day was 215,452 shares.

37. As a result of Ampudia's manipulative trading in CMDCQ stock, he obtained approximately $1,107 in illicit profits.

## Additional Issuers

38. In addition to the three aforementioned securities, Ampudia used Victims' Brokerage Accounts to manipulate the stock of other securities, at least as recently as March 2007.

39. Locateplus Holdings Corp. is a corporation located in Newton, Massachusetts. Its warrants[3] are quoted on the OTC Bulletin Board under the symbol LPHCW.

40. In November 2006, Ampudia purchased LPHCW through a Victim's Brokerage Account at TD Ameritrade. The IP Logs show that the account was accessed by a computer linked to Ampudia's home address.

41. During this time, Ampudia bought and sold LPHCW through his own account at Track Data. As a result of Ampudia's manipulative trading in LPHCW, he obtained approximately $11,881.75 in illicit profits.

42. Micro-Integration Corp. is a corporation located in Frostburg, Maryland. Its common stock is quoted on the Pink Sheets under the symbol MINT.

43. In February 2007, Ampudia purchased shares of MINT through a Victim's Brokerage Account at Wells Fargo Investments, LLC. The IP Logs show that the account was accessed by a computer also used by Ampudia to trade in his own account.

44. During this time, Ampudia bought and sold MINT through his own account at Track Data. As a result of Ampudia's manipulative trading in MINT, he obtained approximately $76,765 in illicit profits.

45. March 2007 trading activity in Ampudia's accounts indicates similar trading

---

[3] A "warrant" is a security that entitles the holder to buy stock of the company that issued it at a specified price.

patterns in at least two additional securities.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

46. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 above.

47. The Defendant, directly or indirectly, singly and in concert, knowingly or recklessly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

(a) employed devices, schemes or artifices to defraud;

(b) obtained money or property by means of untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers or such securities.

48. By reason of the foregoing, the Defendant, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined will again violate, Section 17(a) of the Securities Act, 15 U.S.C. §77q(a).

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

49. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 above.

50. The Defendants, directly or directly, singly or in concert, knowingly or recklessly, in connection with the purchase or sale of securities, by the use of means or instrumentalities or interstate commence, or of the mails, or of a facility of a national securities exchange:

(a) employed devices, schemes or artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

51. By reason of the foregoing, the Defendant, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act, 15 U.S.C. §§78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §240.10b-5.

### PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Ampudia, his agents, servants, employees and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.

### II.

An Order directing Ampudia, and each of his financial and brokerage institutions, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service, or

11

otherwise, to hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of Ampudia, whether held in his name or for his direct or indirect beneficial interest wherever situated.

### III.

An Order directing that Ampudia, and his agents, employees, attorneys, or other professionals, anyone acting in concert with them, and any third party, provide at least 3 days notice to the Plaintiff and seek approval of this Court before filing a bankruptcy proceeding on behalf of the Defendant.

### IV.

An Order directing Ampudia to file with this Court and serve upon Plaintiff Commission, within three (3) business days, or within such extension of time as the Commission agrees to, a verified written accounting, signed by the Defendant, and under penalty of perjury, of:

(1) All assets, liabilities and property currently held, directly or indirectly, by or for the benefit of the Defendant, including, without limitation, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2) All money, funds, securities, property (real and personal), assets and income received by the Defendant, or for his direct or indirect benefit, at any time from September 1, 2001 through the date of such accounting, describing the source,

        amount, disposition and current location of each of the items listed; and

(3)     The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of the Defendant.

### V.

An Order directing Ampudia to repatriate assets held outside the United States, if any.

### VI.

An Order permitting expedited discovery.

### VII.

An Order enjoining and restraining Ampudia, and any person or entity acting at his direction or on his behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

### VIII.

An Order preventing any of Ampudia's creditors or claimants, or any person acting on behalf of such creditor or claimant, from taking any action to interfere with the taking control, possession, or management of Ampudia's assets.

### IX.

A Final Judgment ordering Ampudia to disgorge his ill-gotten gains, plus prejudgment interest, and such other and further amount as the Court may find appropriate.

### X.

A Final Judgment ordering Ampudia to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## XI.

Such other and further relief as this Court deems just and proper.

Dated: March 30, 2007
      New York, New York

By: _____
Mark K. Schonfeld (MS-2798)
Regional Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Suite 400
New York, NY 10281-1022
Tel: (212) 336-1020
Fax: (212) 336-1317

Of Counsel:
Helene T. Glotzer
Gerald A. Gross
Valerie A. Szczepanik
Sheldon Mui